IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DANZIGER & DE LLANO, LLP | : | Judge Petrese B. Tucker |
|  | : |  |
| Plaintiff, | : | Case No. 2:18-cv-002082 |
|  | : |  |
| v. | : | **DEFENDANTS' MOTION TO** |
|  | : | **DISMISS FOR LACK OF** |
| MORGAN VERKAMP, LLC, *et al.* | : | **PERSONAL JURISDICTION,** |
|  | : | **IMPROPER VENUE, AND** |
| Defendants. | : | **FAILURE TO STATE A CLAIM** |

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), Defendants Morgan Verkamp, LLC ("Morgan Verkamp"); Frederick M. Morgan, Esq. ("Morgan"); and Jennifer M. Verkamp, Esq. ("Verkamp") (collectively "Defendants") respectfully move the Court for an Order dismissing the Complaint of Plaintiff Danziger & De Llano, LLP ("Danziger") for lack of personal jurisdiction or, in the alternative, transferring this matter to the United States District Court for the Southern District of Ohio, Western Division at Cincinnati. In the event the Court exercises personal jurisdiction and retains venue, Defendants seek an Order dismissing Danziger's Complaint under Federal Civil Rule 12(b)(6). This Motion is supported by the following memorandum.

Respectfully submitted,

_s/ Ammar S. Wasfi_
AMMAR S. WASFI, ESQUIRE
State Bar ID No. 207600
*Attorney for Defendants*
The Killino Firm, P.C.
1835 Market Street, Suite 2820
Philadelphia, PA  19103
T: (215) 569-1299
F: (215) 569-2741
E-mail: awasfi@killinofirm.com

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

SUMMARY OF FACTUAL ALLEGATIONS IN THE COMPLAINT ............................ 2

PROCEDURAL POSTURE .............................................................................................. 3

LEGAL ARGUMENT ...................................................................................................... 4

    I.    This Court Lacks Personal Jurisdiction over Defendants ........................... 4

    II.    In Lieu of Dismissing the Complaint, the Court May Transfer this Matter
to the U.S. District Court for the Southern District of Ohio,
Western Division at Cincinnati .................................................................. 6

    III.    Danziger's Complaint Fails to State a Claim and Must be Dismissed ....... 7

        A.    Danziger's claims against Defendant Verkamp fail because
Danziger pleads no factual allegations relating to Verkamp ........... 7

        B.    Danziger's claims fail on their merits and must be dismissed .......... 8

            i.    This court must conduct a choice-of-law analysis to
determine the applicable state law governing Danziger's claims ... 8

                a.    Both Texas and Ohio ethics rules banning referral
fees apply to Danziger's breach-of-contract (Count VI),
conversion (Count I), and unjust enrichment (Count III)
claims. .................................................................................. 9

                b.    The Court may refer to each states' laws for Danziger's
fraud (Count II) and tortious interference claims (Count
IV and V) claims interchangeably. ..................................... 13

            ii.    Danziger's breach-of-contract claim (Count VI) must be
dismissed ............................................................................ 13

                a.    Without Michael Epp's written consent, a referral fee
agreement would be void against public policy and cannot
be the basis of a contract claim. ......................................... 13

                b.    The breach-of-contract claim against Morgan Verkamp must
be dismissed as Morgan Verkamp did not exist when the
alleged contract was created. ............................................... 15

c.  Danziger's breach-of-contract claim against Defendants Morgan and Verkamp must be dismissed under the general principles of agency law.                                16

iii.  Danziger's tort claims (Counts I, II, IV, and V) must be dismissed                                                  16

a.  Danziger cannot recast contractual claims as tort claims.        16

b.  Danziger's conversion claim (Count I) must be dismissed because it has no right to a referral fee under Texas's and Ohio's relevant ethics rules.                            18

c.  Danziger's fraud claim (Count II) must be dismissed.            18

1.  Danziger fails to show that false representations were made.                                          18

2.  Danziger's claim for fraud-by-omission fails as no duty to speak existed.                                  20

d.  Danziger's claims for tortious interference with existing and prospective contractual relations (Counts IV and V) must be dismissed.                                                22

iv.  Danziger's equitable claim for unjust enrichment (Count III) must be dismissed because there is no equitable right of recovery for illegal conduct.                                    24

CONCLUSION                                                        24

<u>**MEMORANDUM IN SUPPORT**</u>

<u>**Introduction**</u>

Plaintiff Danziger, a Texas law firm, seeks to recover a $2.13 million "referral fee" from Defendants Morgan Verkamp, an Ohio law firm, and its two principals, Morgan and Verkamp (both Ohio residents). Although the purported agreement to pay that fee was allegedly created between Ohio and Texas—neither of which allow referral fees—Danziger seeks to recover that fee under Pennsylvania law, which allows pure referral fees as long as the client is advised of and does not object to the participation of all involved lawyers. Thus, this is a case about forum shopping.

Plaintiff's claims arise from conversations between one of its principals, Rod De Llano (a Texas lawyer), and Morgan (an Ohio lawyer) in 2007 while Morgan was affiliated with a non-party Ohio law firm. De Llano introduced Morgan to a prospective client, Michael Epp (a German national living in Afghanistan), and the three discussed Epp's potential claim under the federal False Claims Act. Though Morgan presented Epp with a draft fee agreement naming Morgan's old firm and Danziger as co-counsel, Epp never signed that agreement and walked away from the discussions and the lawyers. Years later, in 2010, Epp re-emerged and retained Morgan's new firm, Morgan Verkamp, LLC, to pursue his *qui tam* action. That action, styled *Michael Epp v. Supreme FoodService AG, et al.*, Civil Action No. 2:10-cv-00134-MAK (E.D. PA) (the "Epp Case"), ultimately resulted in an award of $16 million to Epp.

Danziger claims that these events gave it a right to a referral fee totaling 1/3 of Morgan's fee for prosecuting the Epp Case. However, the ethics rules of neither neither Texas's nor Ohio's ethics rules—the two States governing De Llano's and Morgan's professional conduct—permit fee sharing under these circumstances. Rather, both states only allow the division of fees between unaffiliated attorneys where: (1) each attorney's fee is proportional to the services provided or (2) where each

1

lawyer assumes joint responsibility for the representation, and the client has given written consent after full disclosure of the identity of each lawyer and after disclosure that the fees will be divided and the basis for that division. Tex. Disc. R. Prof. Cond. 1.04(f); Ohio R. Prof. Cond. 1.5(e). Thus, under the ethics rules which bind all parties to this case, no referral fee arrangement could have existed.

Presumably cognizant of the illegality of such a referral fee under the ethics rules of its home state, Danziger brought this action in Pennsylvania state court, arguing that Pennsylvania law and custom apply. But during the time of the communications complained of, neither De Llano nor Morgan were present in Pennsylvania; Epp did not live in Pennsylvania; and neither Epp's introduction nor the ensuing communications occurred in Pennsylvania. And, although the Epp Case was brought and litigated in this Court years after these events, Danziger makes clear that this action "is not a professional negligence claim," (Complaint, Doc. 1 at PageID # 239-328 ("Compl."), at ¶ 6), i.e. that its claims do not arise from any conduct occurring within the Epp Case.

Without any specific contacts in Pennsylvania that give rise to Danziger's claims, this Court lacks personal jurisdiction over the Defendants. And for the same reason, even if personal jurisdiction were found, this case is improperly venued in this Court or any other Pennsylvania forum. Thus, the Court should dismiss the Complaint for lack of personal jurisdiction or transfer this matter to the U.S. District Court for the Southern District of Ohio.

Alternatively, if the Court were to exercise jurisdiction and not transfer this matter, Danziger's Complaint must be dismissed for failure to state a claim because, even taking Plaintiff's allegations and characterizations as true, there is no basis for a claim under the relevant law.

2

## Summary of Factual Allegations in the Complaint

In 2007, Danziger principal Rod De Llano introduced Mr. Epp to Morgan while Morgan was an attorney at the Columbus, Ohio law firm of Volkema Thomas, LPA ("Volkema Thomas") (Compl. at ¶ 17-20). The complaint alleges that Morgan and De Llano had several conversations between themselves, and with Epp, about the merits of Epp's case and potential representation (Id. at ¶ 28-46). Epp was provided with a draft engagement agreement employing both Volkema Thomas and Danziger, but Epp did not sign it. (Id. at ¶ 49-61). This draft left blank the possible division of fees between the firms.

Morgan and Co-Defendant Verkamp left Volkema Thomas several months later to start Morgan Verkamp, LLC (Id. at ¶ 62). At that time, Morgan notified both De Llano and Epp that the draft engagement agreement described above was withdrawn (Id.; Ex. 17 to Compl.). This was the last communication Danziger had with Epp. (Id.)

More than two years later, Epp contacted Morgan seeking representation. (Compl., at ¶ 66-70). Morgan asked Epp whether he wanted to involve Danziger in the representation (Id. at ¶ 70; Ex. 21 to Compl.). Epp elected to proceed without Danziger's involvement. Epp never signed any agreement employing Danziger. In fact, outside of De Llano introducing Epp to Volkema Thomas and several of its lawyers, including Morgan, and being tangentially involved in the 2007 discussions, Danziger had no involvement with Mr. Epp or his case. Danziger does not allege that Epp was notified of and did not object to the Danziger's involvement in the Epp Case. In fact, Danziger does not allege that it had any involvement in the Epp Case which was filed in March 2010. Danziger seeks a referral fee of $2.13 million for the act of simply introducing Epp to Morgan years before any representation was undertaken or the suit was filed.

**Procedural Posture**

Danziger initiated this action in the Montgomery County, Pennsylvania, Court of Common Pleas on December 8, 2016 by filing a Praecipe for Issuance of Writ of Summons and a demand for Pre-Complaint Discovery under 231 Pa. C. R. 4003.8. Danziger filed its Complaint on May 2, 2018. Morgan Verkamp removed this action to this Court on May 17, 2018.

**Legal Argument**

I.    **This Court lacks personal jurisdiction over Defendants.**

Once lack of personal jurisdiction is raised as a defense in a Rule 12(b) motion, it is the plaintiff's burden to demonstrate facts sufficient to establish that jurisdiction is proper. *Guzzi v. Morano*, No. 10-1112, 2011 U.S. Dist. LEXIS 115496, *5-6 (E.D. Pa. Oct. 6, 2011). Pennsylvania's long-arm statute[1] is coextensive with the limits placed on the states by the federal Constitution, so Pennsylvania state and federal courts "look[] to federal constitutional doctrine to determine whether personal jurisdiction exists over [non-resident d]efendants." *Id.* (citing *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996); 42 Pa. C.S.A. § 5322(b)).

The Due Process Clause requires that non-resident defendants have "certain minimum contacts with [the forum states] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Marten v. Finchuam*, 499 F.3d 290, 296 (3d Cir. 2007), citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Minimum contacts provide "fair warning" to a defendant that he may be subject to suit in that state. *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). There are two distinct types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984).

---

[1] Federal courts may exercise jurisdiction to the same extent as the states in which they sit.  A state may exercise jurisdiction over a non-resident defendant pursuant to its "long-arm statute." *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 484 (E.D. Pa. 2009).

General jurisdiction does not require that the defendant's contacts with the forum state be related to the underlying cause of action. *Id.* at 414. However, general jurisdiction only exists where the defendant's contacts are "continuous and systematic," *id.* at 416, and may only be exercised over a corporate defendant in those locations where such a defendant is either incorporated or has its headquarters or principal place of business. *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 433 (E.D. Pa. 2015). For an individual, general jurisdiction may only be exercised where the individual is domiciled. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Because Morgan Verkamp is an Ohio LLC headquartered in Cincinnati, Ohio, and both Morgan and Verkamp live in Ohio, the only courts which might exercise general personal jurisdiction over Defendants are there.

Conversely, "specific jurisdiction is established when the basis of the 'plaintiff's claim is related to or arises out of the defendant's contacts with the forum.'" *Atl. Pier,* 647 F. Supp.2d at 484, quoting *Pennzoil Prods. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998). Specific-jurisdiction inquiries have three parts.  First, the defendant must have "purposefully directed" his or her activities at the forum. *Martin v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007), citing *Burger King*, 471 U.S. at 472.  Next, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Id.*, citing *Helicopteros*, 466 U.S. at 414.  And third, the assertion of jurisdiction must comport with traditional conceptions of fair play and substantial justice. *Id.*, citing *Burger King*, 471 U.S. at 476 and *Int'l Shoe Co.*, 326 U.S. at 320.

Defendants do not dispute that, by filing and litigating the Epp Case in Pennsylvania federal court, they may have "purposefully directed" certain activities at a Pennsylvania federal court relating to that representation. But the alleged agreement to pay Danziger a referral fee is not one of those activities. Such a contract, if created, would include two obligations: (1) for Danziger to refer a client to Morgan Verkamp; and (2) for Morgan Verkamp to pay Danziger a fee following

successful resolution of the client's case. Neither of these actions would have been performed in Pennsylvania. Danziger would have made the referral from Texas, and Morgan Verkamp would have forwarded payment from its trust account in Ohio. Danziger's obligations under such a contract would only have been breached in Texas.  Any breach of Morgan Verkamp's alleged obligation to pay Danziger would have occurred in Ohio.

Morgan Verkamp's representation of Epp in the Epp Case, and its prosecution of that litigation, are entirely separate activities than those that allegedly give rise to Danziger's claims here. None of the activities alleged in Danziger's Complaint took place in Pennsylvania: all of Defendants' communications that Danziger contends created the contract, and all alleged misconduct and omissions on the part of Defendants, occurred in Ohio (or, at the very least, between Ohio and Texas). There is no allegation in the complaint from which the Court could conclude that Defendants purposefully availed themselves of this forum for the claims Danziger brings. Its participation in a Pennsylvania lawsuit does not confer the Court with specific personal jurisdiction over the firm, or its principals for such entirely unrelated conduct. Dismissal is appropriate.

## II.  In lieu of dismissing the Complaint, the Court may transfer this matter to the U.S. District Court for the Southern District of Ohio, Western Division at Cincinnati.

Because this matter was removed to this Court from Pennsylvania state court, the appropriate federal statute governing transfer of venue is 28 U.S.C. § 1404(a).  *Connors v. UUU Prods.*, No. 03-6420, 2004 U.S. Dist. LEXIS 6417, *14-15 (E.D. Pa. Mar. 15, 2004) (requiring a party in a properly removed action to proceed under § 1404(a) to seek a change of venue) (quoting *Lamusta v. Lawson Mardon Wheaton*, No. 99-3931, 2000 U.S. Dist. LEXIS 2708, *4 (E.D. Pa. Mar. 10, 2000). Under, § 1404(a), a district court may transfer "any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented," for both "the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a).

6

Had this matter been originally brought in federal court, there would have only been one appropriate venue: the U.S. District Court for the Southern District of Ohio. 28 U.S.C.§ 1391(b) outlines the proper judicial districts in which an action may be filed: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred * * * *." 28 U.S.C. §§ 1391(b)(1)-(2).

The U.S. District Court for the Southern District of Ohio, Western Division at Cincinnati is the only proper venue under this statute: all Defendants are Ohio residents and all reside within the geographical confines of the Southern District of Ohio. Further, all of the alleged tortious conduct occurred in Ohio. The Eastern District of Pennsylvania has no connection to the material facts of this matter, which relate to the breach of an alleged oral agreement made between Ohio and Texas. Further, as none of the events allegedly giving rise to Danziger's claims occurred in Pennsylvania, no party or witness resides in Pennsylvania and all would be inconvenienced by having to travel to this Court for hearings and trial in this matter. Thus, in lieu of dismissing the Complaint for lack of personal jurisdiction, the Court may transfer this matter to the U.S. District Court for the Southern District of Ohio under 28 U.S.C. § 1404(a).

**III.    Danziger's Complaint fails to state a claim and must be dismissed.**

Nevertheless, should the Court find that it has personal jurisdiction over Defendants and that the case is properly venued, this Court should dismiss Danziger's claims under Rule 12(b)(6).

Danziger brings six claims against each defendant: conversion; fraud; unjust enrichment; tortious interference with contractual and prospective contractual relations; and breach of contract (Compl., at ¶ 88-125). However, each of these claims fail as a matter of law for several reasons:

**A. Danziger's claims against Defendant Verkamp fail because Danziger pleads no factual allegations relating to Verkamp.**

While Danziger brings all six claims against all defendants, Danziger only alleges misconduct on the part of Morgan. Not one allegation in Danziger's Complaint describes any misconduct by Defendant Verkamp (*See* Id. at ¶ 24-72). In fact, the only references to Verkamp in the complaint are contained in paragraph 4 (which simply identifies her), paragraph 19 (which states her law firm affiliation), and paragraph 23 (which alleges that she took part in a conference call with Morgan, De Llano and Epp – while she and Morgan were still employed by Volkema Thomas and almost three years before a contract with Epp was signed). Without any allegation of misconduct on her part, Danziger does not state a cause of action against Ms. Verkamp, and the complaint against her should be dismissed in its entirety.

**B. Danziger's claims fail on their merits and must be dismissed.[2]**

**i. This court must conduct a choice-of-law analysis to determine the applicable state law governing Danziger's claims.**

Because this action involves a Texas plaintiff suing Ohio defendants over conduct alleged to have occurred in Ohio and Texas, and because it seeks relief under Pennsylvania law (Compl. at ¶ 84), threshold choice-of-law issues must be decided.

Since this Court sits in diversity, Pennsylvania choice-of-law rules apply. *Toll v. Tannenbaum*, 982 F. Supp. 2d 541, 549 (E.D. Pa. 2013). Pennsylvania courts apply a "contacts/interest" approach to choice-of-law issues and use a three-step analysis. First, the court must determine whether the laws of the various states are incompatible. *Id.*, citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229-230 (3d Cir. 2007). If they are, the court must examine whether all related jurisdictions have governmental policies or interests that would be impaired by the

---

[2] To the extent the Court finds that Danziger has pled factual allegations against Defendant Verkamp, this section applies equally to the claims against her.

8

application of the other states' law, in which case a "true conflict" exists. *Id.* at 550. And if there is a "true conflict," the court must "determine which state has the greater interest in the application of its law." *Id.*, quoting *Pac. Empl'rs. Ins. Co. v. Global Reins. Corp. of Am.*, 693 F.3d 417, 438-39 (3d Cir. 2012). This Court must apply this three-step analysis to determine whether Pennsylvania, Texas, or Ohio law will apply to this case.

> **a. Both Texas and Ohio ethics rules banning referral fees apply to Danziger's breach-of-contract (Count VI), conversion (Count I), and unjust enrichment (Count III) claims.**

Danziger's claims arise from two separate and distinct sets of facts. The first set of events, taking place between 2007 and 2008, involve Danziger's allegation that an oral contract was created between it and Defendants for the payment of a 1/3 referral fee in the Epp Case. Danziger's breach of contract (Count VI), conversion (Count I) and unjust enrichment (Count III) claims are based upon this first set of events. The second set, occurring in 2010, relate to steps allegedly taken by Defendant Morgan to prevent Danziger from participating as Epp's co-counsel in the Epp Case. This second set of facts is relevant to Danziger's fraud (Count II) and tortious interference claims (Counts IV and V).

Regarding Danziger's breach-of-contract, conversion, and unjust enrichment claims, each of which is based on Danziger's claim to a referral fee, the relevant ethics rules of Pennsylvania are entirely incompatible with those of Ohio and Texas. Pennsylvania allows for the recovery of a pure referral fee between Pennsylvania lawyers, so long as the client is advised of the fee-splitting arrangement (but not necessarily the breakdown of that division) and does not object to it. Pa. R. P. C. 1.5(e). Conversely, Texas and Ohio—the states in which De Llano, Morgan and Verkamp are licensed to practice law—expressly prohibit such fees. Tex. Disc. R. Prof. Cond. 1.04(f); Ohio R. Prof. Cond. 1.5(e).

Texas amended its ethics rules in 2005 to expressly <u>abolish</u> referral fees (i.e. the collection of a fee by an attorney, representing a percentage of the referred-to lawyer's total fee recovery in action, for the sole act of referring the client to the other attorney and not taking steps to further the representation of that client). Tex. Comm. of Professional Ethics, Op. 568 (2006). Following the 2005 amendments, Texas Disciplinary Rule of Professional Conduct 1.04(f)(1) now only permits fee-splitting agreements where (1) the division of fees is either "in proportion to the professional services performed by each lawyer," or "made between lawyers who assume joint responsibility for the representation;" and (2) the client consents to the agreement <u>in writing, prior to the time of the association or referral proposed</u>, and the proposed agreement identifies all lawyers participating in the agreement; explains how fees will be divided; and breaks down how much of the fee each lawyer will receive. Rule 1.5(e) of the Ohio Rules of Professional Conduct provides similar requirements for a fee-splitting arrangement, and likewise prohibits pure referral fees.[3]

Because the ethics rules of Pennsylvania and Ohio/Texas[4] governing referral fees are entirely incompatible, this Court must determine that a "true conflict" between those rules exists. A 'true conflict' exists when 'the interests of both [states] would be adversely affected to some degree by the application of the other state's law." *Terry v. McNeil-PPC, Inc.*, 2015 U.S. Dist. LEXIS 66698, *11 (E.D. Pa. May 20, 2015), quoting *Speciality Sufaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223, 232 (3d Cir. 2010).

---

[3] "Lawyers who are not in the same firm may divide fees only if all of the following apply: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the client; (2) the client has given written consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation; (3) exception where court approval of the fee division is obtained, the written statement in a case involving a contingent fee shall be signed by the client and each lawyer * * * *."

[4] Because Texas and Ohio's ethics rules are substantially similar in their treatment of pure referral fees, their ethics rules are treated as if they are grouped in a single state for the purposes of this choice-of-law analysis. *See* Restatement (Second) of Conflicts of Laws, § 186, *comment c* (contract); § 145, *comment i* (tort).

Allowing a Texas law firm to collect a referral fee under Pennsylvania law, when doing so within the State of Texas would be illegal and unethical, would necessarily impair Texas' clear policy prohibiting such fees. The same is true for Ohio: it would have been unethical under Ohio's rules for Defendants to agree to the purported referral fee contract supposedly proposed by Danziger. To bind Defendants, through the application of Pennsylvania's ethics rules, to an alleged referral fee contract created between Ohio and Texas, would undermine the authority of Ohio and Texas to govern the conduct of attorneys within their jurisdictions. At the same time, Pennsylvania's own policy, to the extent it permits referral fees, would be impaired by applying Ohio/Texas' ethics rules.

With a "true conflict" present, this Court must complete its analysis by determining whether Ohio/Texas or Pennsylvania has the greater interest in the application of their ethics rules. This last step requires the Court to "weigh the contacts each jurisdiction has with the dispute on a qualitative scale" and "consider the interests and polices that may be validly asserted by each jurisdiction." *Toll*, 982 F. Supp. 2d at 550, quoting *Pac. Empl'rs.*, 693 F.3d at 438-39. In doing so, the Court will surely follow the extensive body of case law and regulatory guidance on this point, and find that when their lawyers are involved, both Ohio and Texas have a far greater interest in the application of their referral-fee rules than does Pennsylvania, particularly when the conduct at issue also occurred in Ohio and Texas.

In essence, Danziger's breach-of-contract, conversion, and unjust enrichment claims all arise from an alleged right to property under a contract (*see infra*). Pennsylvania applies the approach of the Restatement (Second) of Conflict of Laws in determining the appropriate choice-of-law in breach-of-contract actions: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Toll*,

11

982 F. Supp.2d at 550, citing *Gallagher v. Med. Research Consultants, LLP*, No. 04-236, 2004 U.S. Dist. LEXIS 19981 (E.D. Pa. Oct. 1, 2004) and Restatement (Second) of Conflicts of Law, § 188(2) (1971).

As alleged in the Complaint, the supposed oral contract for a referral fee arose between Ohio and Texas. Further, the place of performance of that contract and its subject matter—the referral of Michael Epp to Morgan and the payment of a fee to Danziger—would have also existed only between Ohio and Texas. And, the parties have their principal places of business and domiciles in Ohio and Texas. <u>None</u> of the parties have any residential or business connection to Pennsylvania.

Thus, interests of Ohio/Texas in this action vastly outweigh Pennsylvania's. This is not an instance where one of the parties to the purported referral fee contract—or the client—resides in Pennsylvania; instead, this is a case in which a Texas law firm simply seeks to apply Pennsylvania law in order to justify its claim to a referral fee when its own ethical rules make such conduct unlawful.[5] Pennsylvania has no interest in aiding a foreign law firm <u>who did no business in Pennsylvania</u>. In fact, one of Pennsylvania's leading regional bar associations has held that Pennsylvania's ethics rules would not apply to out-of-state attorneys and firms:

> A Pennsylvania lawyer can pay a referral fee to or split a fee with an out-of-state lawyer. In doing so, the Pennsylvania lawyer is bound by the Rules of Professional Conduct as they apply in Pennsylvania. **The out-of-state lawyer is bound by the ethics requirements of his own jurisdiction.**

Philadelphia Bar Ass'n, Ethics Op. 93-15.

---

[5] *Daniel M. Homolka, P.A. v. Clark*, No. H-09-151, 2010 U.S. Dist. LEXIS 147484 (S.D. Tex. May 11, 2010) ("If [a] fee splitting agreement violates rule 1.04(f), it is counter to public policy and therefore unenforceable."); *Stone v. Thomas (In re Wright)*, 138 Fed. Appx. 690 (5th Cir. 2005) (fee sharing agreement between counsel was unenforceable because it was not in writing and signed by the client. Mere authorization to associate other counsel in contingency fee agreement, without setting out the fee splitting arrangement between actual counsel, did not satisfy Texas Disciplinary Rule 1.04(f)).

Danziger may argue that because Defendants appeared in this Court *pro hac vice* in the Epp Case, they became Pennsylvania lawyers bound by Pennsylvania's ethics rules. But the fact that the Epp Case was ultimately brought in Pennsylvania does not alter the fact that Pennsylvania has no interest in governing attorney conduct <u>not occurring within a case pending in one of its tribunals</u>. The eventual filing of the Epp Case in Pennsylvania bears no relation to the events underlying *this* case, which occurred <u>years before the Epp Case was filed</u>. The involvement of a Pennsylvania tribunal is fortuitous and after-the-fact. Pennsylvania's ethics rules for referral fees simply do not apply to this action, and Danziger's claimed property right—relevant to its breach-of-contract, conversion, and unjust enrichment claims—is properly governed by Ohio/Texas' ethics law.

      **b.   The Court may refer to each states' laws for Danziger's fraud (Count II) and tortious interference claims (Count IV and V) claims interchangeably.**

Texas and Ohio law relating to fraud and tortious inference claims are identical to Pennsylvania law.[6] As there is no difference, there is no conflict and the Court "may refer to the states' laws [on these claims] interchangeably." *Hammersmith*, 480 F.3d at 229, citing *Hubert v. Tyalor*, 469 F.3d 67, 74 (3d Cir. 2006).

    **ii.   Danziger's breach-of-contract claim (Count VI) must be dismissed.**

      **a.   Without Michael Epp's written consent, a referral fee agreement would be void against public policy and cannot be the basis of a contract claim.**

Danziger alleges that an oral contract existed between itself and Defendants "wherein it was expressly agreed that in return for referring a case that resulted in a recovery, Defendants would pay

---

[6] For fraudulent misrepresentation, *see Morrow v. Reminger & Reminger Co. LPA*, 915 N.e.2d 696, 706 (Ohio App. 2009); *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts*, 300 S.W.3d 348, 366 9 (Tex. App. 2009); *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp.2d 773, 783 (E.D. Pa. 2008) (applying Pennsylvania law). For fraudulent concealment, *see Bucci*, 591 F. Supp. 2d at 783; *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. 1997); *Fed'd Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 854-855 (Ohio App. 2000). For tortious interference claims, *see Phillips v. Selig*, 959 A.2d 420, 428-430 (Pa. Super. 2008); *A& B-Abell Elev. Co.v . Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1284 (Ohio 1995); *Plotkin v. Joekel*, 304 S.W.3d 455, 484-487 (Tex. App. 2009).

the Plaintiff a referral fee which amounted to 1/3 of Defendants' entire fee recovered." (Compl. at ¶ 120). Defendants dispute the purported contract's existence. But taking Danziger's allegations as true, the referral fee arrangement Danziger describes would violate both Texas's and Ohio's ethics rules prohibiting referral fees. As stated above, both states only allow for a division of fees where: (1) the division is proportional to the services rendered <u>to the client</u>, or where both attorneys agree to joint responsibility for the representation; and (2) where the <u>client consents to the division</u>, <u>in writing</u>, <u>prior</u> to the enforcement of the fee-splitting agreement. Tex. Disc. R. Prof. Cond. 1.04(f); Ohio R. Prof. Cond. 1.5(e).

The purported fee agreement Danziger describes fails to meet either requirement. Danziger seeks a fee for the simple act of referring Michael Epp to Morgan and participating in some initial conference calls. Epp <u>never</u> consented to *any* fee division between Danziger and Defendants. Rather, Danziger's allegations demonstrate that (1) Epp <u>never</u> signed any fee agreement identifying Danziger and Volkema Thomas as co-counsel in 2007-2008; (2) Epp was never provided any agreement on division of fees with Danziger and never consented to same, orally or in writing. Therefore, no ethical agreement to split fees existed.

Under Ohio and Texas law, contracts that are illegal are void as against public policy. In fact, both states have held squarely that fee-splitting contracts that violate their ethics rules are void. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 205 (Tex. 2002) ("A fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement"); *Garcia v. Garza*, 311 S.W.3d 28, 43 (Tex. App. 2010) (recognizing several cases in which Texas courts have concluded agreements violating disciplinary rule requiring disclosure of fee sharing were unenforceable and void as against public policy); *In the Estate of Aguilar*, No. 04-15-00688-CV, 2017 Tex. App. LEXIS 2923, *23-24

14

(same); *Dragelevich v. Kohn, Milstein, Cohen & Hausfeld*, 755 F. Supp. 189, 192 n. 5 (N.D. Ohio 1990) (stating that a pure referral fee agreement is "not 'valid'" under Ohio Rule 1.5(e)'s predecessor); *Waterman v. Kitrick*, 572 N.E.2d 250, 254 (Ohio App. 1990) (same).

Because Danziger's purported referral fee contract violates both Texas and Ohio's relevant ethics rules, it would be void against public policy. Danziger cannot state a breach-of-contract claim on such a contract, and Count VI of its Complaint must be dismissed.

### b.  The breach-of-contract claim against Morgan Verkamp must be dismissed as Morgan Verkamp did not exist when the alleged contract was created.

In order to form an enforceable contract under any of the three states' laws, there must be an offer, acceptance, and consideration or mutual meeting of the minds.[7] Furthermore, "[w]hile not every term of a contract must be stated in complete detail, every element must be specifically pleaded. Clarity is particularly important where an oral contract is alleged." *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super. 2006).

Danziger fails to plead any factual allegations that there was an offer, acceptance, and either consideration or mutual meeting of the minds between Danziger and Morgan Verkamp. In fact, the only facts Danziger pleads that relate to the supposed terms of the alleged oral contract between Danziger and Morgan Verkamp are:

> In April 2007, Plaintiff referred a client, Michael Epp ("Epp"), to Defendants and began working alongside Defendants to provide legal representation to Epp over a period of many months, at least through January 2008. **During this time frame it was agreed that Plaintiff would refer Epp as a *qui tam* Plaintiff to Defendants with the understanding that Plaintiff would be paid one-third of the total fee in Epp's case.**"

(Compl. at ¶ 7) (emphasis added).

---

[7] *Schreiber v. Olan Mills*, 426 Pa. Super. 537, 541, 627 A.2d 806, 808 (1993), citing *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127, 128 (1940); *Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio App. 1998); *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App. 2010).

But these alleged events all took place at a time when Morgan <u>was employed by and acting as an agent for Volkema Thomas</u> (Compl., at ¶ 17-61). None of these allegations in any way involve Morgan Verkamp, which did not even <u>exist</u> at the relevant time. As such, it is impossible for Morgan to have entered into an oral contract with Danziger on behalf of Morgan Verkamp, and the breach-of-contract claim against it must be dismissed.

### c. Danziger's breach-of-contract claim against Defendants Morgan and Verkamp must be dismissed under the general principles of agency law.

Under the law of all three states, an agent of a disclosed principal is not personally liable on a contract made between the principal and a third party unless the agent specifically agrees to assume liability.[8] At all times, Danziger knew of Morgan's (and Verkamp's) employment Volkema Thomas and later Morgan Verkamp, and knew at all relevant times that it was dealing with Morgan as an agent of Volkema Thomas and Morgan Verkamp (Compl., at ¶ 2, 19, 62; *see also* Exs. 1, 3-11, 13-16, 18-21 to Compl. (identifying Morgan as an attorney at Volkema Thomas and Morgan Verkamp through his e-mail signature and e-mail address)). Thus, Danziger cannot state a claim for breach of contract against either Mr. Morgan or Ms. Verkamp, individually.

### iii. Danziger's tort claims (Counts I, II, IV, and V) must be dismissed.

### a. Danziger cannot recast contractual claims as tort claims.

As is clear from the beginning of its Complaint, Danziger brings this action in an effort to collect a referral fee for introducing Michael Epp to Defendant Morgan. It alleges that Defendants owe Danziger a referral fee by virtue of an alleged oral contract made between De Llano and Morgan. In other words, this lawsuit arises from the allegation that Defendants have refused to perform as Danziger believes they are obligated to. While it attempts to describe this act as a

---

[8] *Casey v. GAF Corp.*, 828 A.2d 362, 369 (Pa. Super. 2003); *Plain Dealer Publ. Co. v. Worrell*, 898 N.E.2d 1009, 1011 (Ohio Ct. App. 2008); *Roe v. Ladymon*, 318 S.W.3d 502 (Tex. App. 2010).

"violation of State and Federal criminal law;" "illegal conversion;" "fraud;" and as a tortious interference with contractual and prospective contractual relations, at its core, the Complaint sets forth nothing more than a contract claim. Danziger alleges that Defendants are bound to pay it a referral fee, and Defendants' refusal to do so has caused Danziger damages.

Pennsylvania courts, state and federal, have consistently rejected tort remedies for conduct that is remediable as a breach of contract. *See eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).[9] This "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract and tort claims." *eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002), citing *Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super. 1992). It "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id*. The difference between contract and tort claims has been explained as follows:

> Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals . . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Bash*, 601 A.2d at 829, citing *Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158, 1165 (E.D. Pa. 1978).

A breach of contract may give rise to an actionable tort only when "the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id*., citing *Closed Circuit Corp. v. Jerrold Electronics Corp.*, 426 F. Supp. 361, 364 (E.D. Pa. 1977). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the

---

[9] *See also Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super. 1992); *Peoples Mortg. Co. v. Federal Nat'l Mortg. Ass'n*, 856 F. Supp. 910 (E.D. Pa. 1994). Ohio and Texas likewise hold that tort remedies are unavailable for what are in essence contract claims. *Telxon Corp. v. Smart Media of Del., Inc.*, 2005-Ohio-4931 (Ohio App. 2005); *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494-95 (Tex. 1991).

contracts, and not by the larger social policies embodied by the law of torts.'" *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002), quoting *Bash*, 601 A.2d at 830.

The gist of this action is contract, not tort. Danziger cites no larger social policy embodied by tort law that Defendants allegedly violated. Its claims stem from its belief that Defendants are wrongfully withholding money they allegedly previously agreed to pay. That is a hornbook contract claim. The nature of the relationship between Danziger and Defendants, if any, is that of two contracting parties: taking Danziger's allegations as true, Defendants' obligation to pay Danziger money stems from an alleged agreement, not some larger social norm. The existence of that agreement is central to this case, not collateral, and a simple breach-of-contract claim cannot be recast as a litany of tort claims. Danziger's tort claims (Counts I, II, IV, and V) should be dismissed.

### b. Danziger's conversion claim (Count I) must be dismissed because it has no right to a referral fee under Texas's and Ohio's relevant ethics rules.

Even if the Court finds that Danziger's conversion claim is not precluded as seeking to recover property that is based in contract, that claim still fails. The elements of conversion are: (1) the deprivation of another's right in, or use or possession of, property; (2) without the owner's consent; and (3) without lawful justification. *Kavalec v. Ohio Express, Inc.*, 71 N.E.3d 660, 666 (Ohio App. 2016); *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971). Here, Danziger is attempting to establish a right to a referral fee. However, Danziger has no right to such a fee because that fee would violate both Texas' and Ohio's Rules of Professional Conduct, as discussed above. If such a claim would not be recognized in contract, it certainly cannot be recognized in tort. As Danziger does not have any right to a referral fee, the conversion claim must be dismissed.

### c. Danziger's fraud claim (Count II) must be dismissed.

#### 1. Danziger fails to show that false representations were made.

Danziger's rests its fraudulent misrepresentation claim (Count II) on a January 14, 2010 e-mail exchange between De Llano and Defendant Morgan (Ex. 20 to Compl.), discussing a news article De Llano forwarded that referenced a recent settlement in an unrelated *qui tam* action:

> From De Llano:
>
>> Rick, I hope you're doing well.
>>
>> Do you remember if this is the case we looked into a few years back, but the client backed out b/c he wanted to cut a deal with the company? The one where the return email went to his buz [sic] address, so the company found out?
>
> And Morgan's Response:
>
>> Thank heavens, no. Michael Epp worked with something like United Food Service.
>>
>> Funny timing on your e-mail; I was on a conference call with the Texas AG's folks on the Elidel case, which continues to chirp along.
>>
>> Things are within acceptable limits here; you?

While this exchange simply demonstrates that De Llano asked Morgan whether an unrelated *qui tam* action involved Epp, to which Morgan truthfully[10] responded "no," Danziger takes pains to extend this exchange to mean that "Morgan's failure to advise Plaintiff that Defendant was representing Epp [in response to De Llano's e-mail] was a material misrepresentation which was false when it was made." (Compl. at ¶ 97).

In Pennsylvania, a prima facie case of fraud requires: (1) a false representation; (2) made with knowledge of its falsity or recklessness as to whether it is true or false; (3) which is intended to make the receiver act; (4) justifiable reliance on the misrepresentation; and (5) damages to the

---

[10] Since the Epp Case would not be filed for another two months (Compl. at ¶ 73), and Danziger's exhibits show that Epp did not contact Morgan until months *after* this exchange, it is clear that the action De Llano references is unrelated.

receiver as a proximate result of the reliance. *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp.2d 773, 783 (E.D. Pa. 2008) (applying Pennsylvania law).

Logically, such a claim does not lie when the alleged statement giving rise to the claim is true. De Llano asked Morgan whether a certain, unrelated action involved Epp. Morgan truthfully responded that it did not, and Danziger does not allege that Morgan's statement was false. Danziger instead argues that Defendants defrauded it by not *volunteering* additional information Danziger alleges existed beyond what was asked. These facts, even taken as true, do not state a claim for fraudulent misrepresentation. Finally, as is evident from Exhibit 21, Morgan Verkamp had no existing relationship, much less undertaken the representation of Epp at the time of that January 14, 2010 email exchange.  So even if Danziger had asked, "have you undertaken the representation of Epp" or "have you heard from Epp," the truthful answer would have been "No."

### 2. Danziger's claim for fraud-by-omission fails as no duty to speak existed.

Presumably knowing of the fatal flaws in its fraudulent misrepresentation claim, Danziger "alternatively" argues that "Defendants' intentional failure to notify Plaintiff of their subsequent representation of Epp, is a willful deceptive omission which constitutes a misrepresentation as Defendants were obligated to inform Plaintiff of the subsequent representation of Epp." (Compl. at ¶ 98). In other words, Danziger argues that, if Morgan was not actually representing Epp when De Llano contacted Morgan in January 2010, that Morgan should have taken steps to contact De Llano once Epp reemerged to inform De Llano of that subsequent fact. This claim fails for two reasons.

First, Morgan (and by extension Defendants) did not owe De Llano/Danziger a duty to speak. A fraud claim based on intentional non-disclosure (i.e. fraud by omission) has the same elements as fraud, except that "an omission is actionable as fraud only where there is an independent duty to disclose the omitted information." *Bucci*, 591 F. Supp. 2d at 783 (quoting *Duquesne Light Co. v.*

*Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995) (holding that "Pennsylvania courts have adopted the duty to speak requirement" in fraud by omission cases)

"The duty to speak arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Id.*, quoting *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980). Such a duty exists in five limited circumstances: (1) where there is an agreement between the parties; (2) as a result of one party's reliance on the other's representations, if one party is the only source of information to the other party or the problems are not discoverable; (3) when disclosure is necessary to prevent an ambiguous or partial statement from being misleading; (4) where subsequently acquired knowledge makes a previous representation false; or (5) where the undisclosed fact is basic to the transaction. *Id.*, citing *Duquesne*, 66 F.3d at 611; *City of Rome v. Glanton*, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997); and Restatement of Torts (Second), § 551.

Danziger's allegations, even taken as true, do not support a duty to speak. Danziger's claim is that, after telling De Llano that the referenced settlement did not involve Epp, Morgan should have voluntarily informed De Llano months later when Morgan Verkamp undertook the representation of Epp. This situation does not fall into any of the limited categories of situations creating a duty to speak: There is no agreement between the parties to enter into a fiduciary relationship; nothing about Morgan's response was ambiguous or misleading; Morgan's response was not rendered false by his subsequent communications with Epp; and Morgan's representation of Epp is not a fact basic to the question De Llano asked.

Second, Morgan could not have disclosed his representation of Epp to De Llano as a matter of legal ethics. Epp obviously chose not to retain Danziger, and there is no allegation that Epp consented to Morgan telling Danziger that he had retained Morgan Verkamp. Unless Epp gave

Morgan consent to do so, Morgan's duty of confidentiality (regardless of state)[11] prevented him from disclosing his legal representation of Epp to anyone in a *qui tam* matter, which is filed under seal. 31 U.S.C. § 3730(b)(2). Morgan's duty of confidentiality also precludes Danziger from stating fraud by omission as a matter of law. These allegations fail to state a claim for fraud by omission.

> ### d. Danziger's claims for tortious interference with existing and prospective contractual relations (Counts IV and V) must be dismissed.

Danziger brings claims against all Defendants for tortious interference with existing and prospective contractual relations (Compl. at ¶ 108-118). These claims require Danziger to plead four elements: (1) the existence of a contract or prospective contractual relation; (2) purposeful action by the defendant specifically intended to harm that relation; (3) absence of privilege or justification on the part of the defendant; and (4) actual legal damage resulting from the defendant's conduct. *Phillips v. Selig*, 959 A.2d 420, 428-430 (Pa. Super. 2008).

Danziger's claim for tortious interference with existing contractual relations fails for the simple reason that no contract ever existed between itself and Epp. Danziger has pled no contract, oral or written, between itself and Epp. Epp was given a draft engagement letter with both Volkema Thomas and Danziger. Epp chose not to sign that agreement (Compl. at ¶ 49-62). As Danziger expressly alleges: "Morgan knew with absolute certainty when he wrote [the Feb. 2010 e-mail attached as Exhibit 21 to the Complaint] that Plaintiff was interested in participating in the representation of Epp. Indeed, the earlier fee agreement with Epp [that was never executed] included Plaintiff." (Id. at ¶ 71) (Emphasis added). Danziger's claim is that Morgan took steps to prevent its involvement with the Epp Case, not that Danziger was already representing Epp under an existing fee agreement and that Defendants caused Epp to sever that contractual relationship. Danziger's claims for tortious inference with existing contractual relations (Count IV) must be dismissed.

---

[11] Pa. R.P.C. 1.6(a); Ohio R. Prof. Cond. 1.6(a); Tex. Disc. R. Prof. Cond. 1.05(a).

Second, Danziger's allegations fail to show a prospective contractual relation between itself and Epp. Pennsylvania courts define a "prospective contractual relationship" as "something less than a contractual right, something more than a mere hope." *Thompson Coal Co.*, 412 A.2d at 471 (Emphasis added). Rather, the plaintiff must plead "a reasonable likelihood or probability that the anticipated business relationship will be consummated." *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275 (Pa. Super. 2012). The plaintiff also cannot base its expectation on a future contractual relationship solely on the existence of a prior relationship. *See, e.g., Phillips*, 959 A.2d at 429 (plaintiff-attorney's "longstanding, uninterrupted relationship" with client insufficient as a matter of law to demonstrate probability of a future contractual relationship).

Here, the facts demonstrate that Epp rejected a prospective co-counsel relationship between Volkema Thomas and Danziger when he chose not to sign the fee agreement Morgan presented in 2007. Epp then had no communication with Danziger, Volkema Thomas or Morgan Verkamp for more than two years before contacting only Morgan in 2010. Danziger does not allege that it made any effort to contact Epp during those two years, and Exhibit 20 to the Complaint demonstrates that Danziger only viewed Epp as someone who was once a potential client "a few years back." Danziger had no reasonable expectation of ever representing Epp after Morgan withdrew the original proposed fee agreement. At best, it had only a "mere hope" of such representation based on a prior prospective relationship. This is insufficient to state a claim for tortious interference with prospective contractual relations (Count V) as a matter of law.

Third, Danziger fails to identity any improper conduct by Morgan in speaking to Epp in 2010. Morgan placed the decision to include Danziger in any future representation in Epp's hands, and Epp declined. The intent element "requires proof that the defendant acted 'for the specific purpose of causing harm to the plaintiff.'" *Phillips*, 959 A.2d at 429, quoting *Glenn v. Point Park*

*College*, 272 A.2d 895, 899 (Pa. 1971). There is no allegation nor any reasonable inference that, by putting this decision to Epp, Morgan somehow intended to prevent Danziger from future involvement in the Epp Case.

Finally, even if Morgan's conduct could be inferred as seeking to interfere with a prospective contractual relationship Danziger may have had with Epp, Morgan was privileged to do so. "What is or is not privileged conduct in a given situation is not susceptible to a precise definition." *Glenn*, 272 A.2d at 899. Rather, Pennsylvania law excludes from this tort those interferences "which 'are sanctioned by the 'rules of the game' which society has adopted,' and to 'the area of socially acceptable conduct which the law regards as privileged.''" *Univ. Graphs v. Pro Image Corp.*, 913 F. Supp. 338, 346 (M.D. Pa. 1996), quoting *Glenn* at 899.

While Danziger describes Morgan as having impure personal motives, the Complaint's allegations and exhibits demonstrate that Morgan did nothing but represent a client who contacted him and then hired him for a case uniquely within his expertise. Societal norms did not require Morgan to "share" that client with Danziger. Rather, at least one Pennsylvania court has rejected a tortious interference claim brought by an attorney who claimed that a client was taken from him. *See Phillips*, 959 A.2d at 432-434. Morgan's act of asking Epp about involving Danziger, and not taking affirmative steps to involve Danziger himself, were entirely proper. *Slater v. Rimar, Inc.*, 338 A.2d 584, 590 (noting client's right to representation by counsel of his choice). Defendants cannot be liable for giving their client the right to be represented by the lawyers of his choice.

> ### iv.  Danziger's equitable claim for unjust enrichment (Count III) must be dismissed because there is no equitable right of recovery for illegal conduct.

Unjust enrichment is an equitable action sounding in quasi-contract, and liability on such a claim "'arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain.'" *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984),

quoting *Hummel v. Hummel*, 14 N.E.2d 923, 925-926 (Ohio 1938); *see also Tex. Integrated Conveyor Sys. v. Innovative Coneyor Concepts*, 300 S.W.3d 348, 367 (Tex. App. 2009). It exists in the absence of an express or implied contract covering the same subject matter. *Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 918-19 (Tex. App. 2017); *Padula v. Wagner*, 37 N.E.3d 799, 813 (Ohio App. 2015). Thus, in the event the Court dismisses Danziger's contract claim, equity will likewise refuse to create a right that would be void as against public policy. *Leatherbury v. Reagan*, 518 N.E.2d 58, 60 (Ohio App. 1987) (court will not provide equitable relief for unjust enrichment if doing so would defeat public policy); *Cruise v. O'Quinn*, 273 S.W.3d 766 (Tex. App. 2008) (refusing to allow unjust enrichment claim based on fee-splitting agreement that violated Disciplinary Rule 1.04(f)). Danziger cannot bring an equitable claim to recover what is an unethical (and illegal) referral fee, and its unjust enrichment claim thus fails and must be dismissed.

## Conclusion

For all of the foregoing reasons, Defendants Morgan Verkamp, LLC; Frederick M. Morgan, Esq.; and Jennifer Verkamp, Esq. respectfully request that the Court: (1) dismiss Plaintiff Danziger & De Llano, LLP's Complaint for lack of personal jurisdiction, or transfer this matter to the U.S. District Court for the Southern District of Ohio; or (2) alternatively, dismiss Danziger's Complaint in its entirety for failure to state a claim, with prejudice.

Respectfully submitted,

_s/ Ammar S. Wasfi_____
AMMAR S. WASFI, ESQUIRE
State Bar ID No. 207600
*Attorney for Defendants*
The Killino Firm, P.C.
1835 Market Street, Suite 2820
Philadelphia, PA  19103
T: (215) 569-1299
F: (215) 569-2741
E-mail: awasfi@killinofirm.com

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DANZIGER & DE LLANO, LLP | : | Judge Petrese B. Tucker |
|  | : |  |
| Plaintiff, | : | Case No. 2:18-cv-002082 |
|  | : |  |
| v. | : |  |
|  | : |  |
| MORGAN VERKAMP, LLC, *et al.* | : |  |
|  | : |  |
| Defendants. | : |  |

## CERTIFICATION OF SERVICE

I, **AMMAR S. WASFI, ESQUIRE**, hereby certify that a true and correct copy of the attached Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim was served by sending via ECF Notification to counsel listed below this 4th day of June, 2018.

Jeffrey W. Ogren, Esquire.
Bochetto and Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19103

Respectfully submitted,

_s/ Ammar S. Wasfi_____
AMMAR S. WASFI, ESQUIRE
State Bar ID No. 207600
*Attorney for Defendants*
The Killino Firm, P.C.
1835 Market Street, Suite 2820
Philadelphia, PA  19103
T: (215) 569-1299
F: (215) 569-2741
E-mail: awasfi@killinofirm.com